This first case is 4-14-0106, People v. Paul Shaw, and appearing for the appellant is Andrea Kimmel. Your Honors, may it please the Court, Counsel, I'm Amanda Kimmel with the Office of State Appellate Defender here on behalf of Mr. Paul Shaw. Fitness is fundamental to the fairness and integrity of the trial process because it is the foundation upon which individuals may exercise a myriad of other essential rights necessary for trial. Here, Mr. Shaw's fitness stand trial was questioned by his own attorney twice prior to trial. At the fitness hearing that occurred the day before trial, the parties stipulated to Dr. Lowe's report, and the trial judge found Mr. Shaw fit. However, there was no exercise and independent judicial analysis when making that determination. In essence, the trial court rubber-stamped Dr. Lowe's The judge should have made some effort to put on the record that he did exercise independent judicial analysis, and there's a myriad of ways that he could have done that. For example, in People v. Cook, the 2nd District stated that by asking questions of defendant and defense counsel, that was one way to show that he was exercising independent judicial analysis. Likewise, in People v. Contorno, the 2nd District also stated, putting on the report in any way. What do you mean by that? What did they mean? I believe they mean just simply discussing. I've been in that position as a trial judge. I've received a report from the shrink saying, eh, he's all better, or good enough, as the case may be. What do I then do? I'm supposed to then turn to the defense attorney and say, do you agree, or do you disagree? What do I do? That would be exactly one option, because the purpose of fitness is understanding the nature of proceedings and being able to assist in one's own defense. Certainly, the defense attorney could answer questions as to whether or not, in this case, Mr. Shaw was able to assist in his own defense. Additionally here, there was absolutely no discussion of the substance of Dr. Lowe's meager four-page report, or the prior fitness evaluation that was conducted by Dr. Jekyll six months prior to trial. So what if the judge said, okay, we have the reports, now let's have a hearing? Let's have a fitness hearing? Yeah. What, you're, we'll give you different roles. You're now the prosecutor. You're the, here's the hearing. Say, okay, Ms. Skimmel, proceed. Well, the prosecutor, if there was a bona fide doubt of fitness, the prosecutor... The prosecutor says, you don't think there is a bona fide doubt. You now have Dr. Lowe's report, says now he's good enough to stand trial. And the judge says, okay, everyone agrees that I may consider this report. Fine. I'll consider the report. It's part of the evidence. Now you may proceed. What else would you be presenting? At times people present witness testimony besides... In this case, what would you be presenting? Well, certainly we could question the two doctors and the discrepancies between their two reports. Certainly a stipulation is just presenting evidence without having a witness testify. But the trial judge is still the ultimate decider of the issues of fitness. Some issues between the two reports are the fact that the doctors gave Mr. Shaw different diagnoses of his mental conditions. Additionally, in one report it discussed that Mr. Shaw was hospitalized in a mental health facility starting at age eight or nine, and repeatedly throughout his youth. Well, your argument, by the way, is entirely appropriate and correct and based on Lewis. I'm just wondering if it isn't time to tell the Supreme Court that we have to follow Lewis, but Lewis really isn't a well-reasoned decision. He's 30 years old, and the experience suggests that it's not a real-world situation. Certainly allowing parties to stipulate to the reports, which is what the procedure that's required, is still good law. However, the purpose of Lewis is that the trial court is the ultimate arbiter of fitness determinations. In more recent cases, such as Contorno and Cook, or in the First District of People v. Gibson, all of those cases are really implementing the purpose of Lewis, which is that the trial court is the one to make the determination. I understand it in a theoretical sense, but I just, having been there and thinking about these cases, and I've written stuff recently which trial judges haven't done correctly, I'm just, it seems to me like we're acknowledging a legal fiction here. If I'm the trial judge and I look at this report and I accept that it's stipulated, and I still have concerns or problems, I can say, in addition to this, I still have concerns or problems and want to have some other evidence presented. But if a trial judge accepts it, it seems to me that that means he or she is satisfied that this guy is now fit to stand trial and we ought to proceed. The idea that somehow I'm going to, I can accept the report as stipulated evidence and then turn to the prosecutor and defense attorney and say, let's proceed with the hearing, I don't know what they're going to present. What else are they supposed to say? Especially if the prosecutor thinks the guy is fit to stand trial and the defense attorney, having raised concerns, has now received the report that says, yep. Certainly. Under the fitness statute, section 104-16, which dictates what evidence is presented at a fitness hearing, one particular form of evidence is the defendant's ability to communicate with counsel. That's one example of evidence which would be admissible at a fitness hearing. I understand. Yes, you're right. So I turn to you and say, Ms. Kim, on behalf of the state, what evidence do you have to present to me on that? And I don't know what you can do. Right. And the other thing, you're going to call the defense attorney? I think we've got serious issues when we start putting the defense attorney in the witness stand about all of this. Often, in other cases, individuals' family members or their own doctors have been called to testify regarding fitness. Ms. Kim, following up with Justice Eichmann's comments here, it really, the evidence was there. It was there in Dr. Lowe's report. What was missing was the trial judge's observations on the record, either orally or in a written docket entry or order, indicating that he had, in fact, reviewed the report and, based on his review of the report, was finding the defendant fit. It's almost that there is a presumption against the trial judge having reviewed the report, the way the case law stands at this point, in view of his silence, without any affirmative showing on the record that he has, in fact, reviewed the report. It appears that Lewis and other cases would have us presume the trial judge didn't review that report and base his finding of fitness on the report. Is that accurate? I would agree with that. And, again, there only needs to be some additional statements on the record that indicate that the trial court was the one exercising their discretion in making the fitness determination, because the trial court is the ultimate arbiter of fitness determination. So, in this case, following up on Justice Harris' question, had, I guess this was Judge received the stipulation that we can continue, actually, the stipulation means I can consider this report of Dr. Lowe without actually having to see Dr. Lowe. Correct. If he were to show up, this is what he testified to, I would agree to that. Okay. So, had Judge DeFantis turn to the lawyers and said, I've seen Mr. Shaw here in court and interacted with him in some instances, and this report is consistent with my observations. That would certainly be enough to satisfy the trial court showing that he exercised independent judicial analysis. So, doesn't that suggest that we're in an area of the magical incantation rule of the judge has to issue these magical incantations, which, as Justice Harris' question points out, ought to be, seems to me in context, a compelling inference that that's what the judge is thinking of doing. Your Honor, there's no magical language to satisfy due process in this instance. Well, but that sounds like magical language to me. But it is the trial court actually acknowledging that he has observed, not only observing the trial court, but taking that observation in conjunction with the report and making a fitness determination. Here, there's no indication that the trial court, he certainly didn't say, I've read this report. And again, he didn't discuss any issues that were raised in the report regarding Mr. Shaw's mental capability or Mr. Shaw's inability to communicate, which was later seen at trial and sentencing. And in Lewis, there was no issue raised besides the quality of the stipulation. However, here, there is a suggestion that Mr. Shaw was not fit at trial and sentencing. And there's evidence that there was a bona fide doubt of his fitness. Now, factors related to whether or not there's a bona fide doubt of fitness include a defendant's mental health, as well as defense counsel's own statements regarding defendant's competency. And here, defendant's behavior and demeanor at trial indicate that there was a bona fide doubt of Mr. Shaw's fitness. Mr. Shaw testified against counsel's advice. He made a lengthy, rambling statement. And that testimony is attached to the brief in an appendix. I would point to the transcript in full, as well as defense counsel's own statements at sentencing describing Mr. Shaw's trial testimony, and where he said none of what Mr. Shaw said made any sense. Similarly, the jury sent a note requesting Mr. Shaw's trial transcripts because they  As I mentioned earlier, at a fitness hearing, a defendant's ability to observe, relate, recollect incidences, especially related to the alleged occurrence, are evidence of his fitness. Here, Mr. Shaw was not able to communicate anything, really, to the jury. And his defense counsel certainly stated that he did not even understand what he said at trial. So Mr. Shaw's statements at trial, and likewise his, again, lengthy, rambling statement that he made at sentencing, raised a bona fide doubt of his fitness because they show a complete inability to relate the occurrences of the alleged incident and communicate with his own counsel. Now, additionally, the prior medical opinions of Mr. Shaw also raised a bona fide doubt of his display at trial. But counsel, I just want to make sure, you're suggesting additional or further bases to cast the defendant's fitness in doubt. But to be clear, if the trial judge had indicated on the record that it had reviewed Dr. Lowe's report and found that, based on that report, it was finding the defendant fit, that that would have been sufficient here? That would have been sufficient, as well as any questions he may have posed to defense counsel or Mr. Shaw at that original fitness hearing. However, the Illinois Supreme Court in Pupil v. Ham has stated that the trial court has a sua sponte duty to raise the issue of fitness. And that issue can occur even after there has been a proper fitness hearing. The second district in Pupil v. Shrowack found that the trial court still had a duty to sua sponte, raise the issue of fitness, when a defendant made bizarre comments at trial at sentencing, even though there had been an earlier determination that defendant was fit. How bizarre do they have to be? Rambling incoherence is often the hallmark of right of elocution, in my experience. Well, there is a marked contrast between Mr. Shaw's statements at trial and some dictated conversations that he had with the psychological evaluators. In Dr. Jekyll's report, there is a conversation that's dictated where Dr. Jekyll poses questions to Mr. Shaw and answers in complete sentences, coherent sentences. Also, Dr. Lowe, while pointing out that there were some abnormalities in Mr. Shaw's speech, described it as mostly coherent. This marked contrast between what was present in his evaluations and how he presented in his evaluations versus his trial testimony indicated that there was a bona fide doubt of his fitness. Just so we're clear, and now I want to put you in position of being Judge Kimmel instead of Prosecutor Kimmel, you're now the trial judge. You received this report. You look it over. Parties are stipulating to it. On this record, from everything you've seen, what is before Judge DeFantis? What's before Judge Kimmel that you could ask for or expect to hear further evidence on? We're just concerned with your personal experiences. Well, you know, the judge who had been hearing this case before has retired. This is your first hearing, your first encounter with Mr. Shaw, who's just sitting there. You say, okay, I have this report. Let's have a fitness hearing in addition to the fitness hearing, Mr. Prosecutor. In addition to the report you stipulate to, Mr. Prosecutor, do you have any other evidence you wish to present? Certainly. Do you expect the prosecutor to present anything further? Well, so if there is a bona fide doubt of fitness, then the prosecutor One had been, the court, based upon representations of the Fenton's Council, had ordered an investigation. We got the investigation. Here's Dr. Moe's report supplementing Dr. Jocko. Okay, the parties stipulate to it. And Judge Kimmel carefully says, I'm accepting the stipulation as to the substance of the report. Meaning that I will take it as if the doctor were here to testify. And we'll have our hearing. In addition to the report, what other evidence do you wish to present, Mr. Prosecutor? Well, certainly in this instance, another piece of evidence that could have been presented was testimony from the Champaign Jail mental health workers. Both fitness evaluations. Do you expect the prosecutor to put that on? I do not expect the prosecutor to put that on. Or the defense counsel? Was it his obligation to do that? Certainly. In People v. Holt, the Illinois Supreme Court determined that a counsel was not ineffective for not arguing defendant was fit. In that case, defense counsel believed that his client was unfit. However, the defendant themselves, Mrs. Holt, she believed that she was fit. And the Illinois Supreme Court found that defense counsel was not ineffective for arguing, not arguing that she was fit in that instance. But the question in fitness is ability to cooperate with counsel and understand the nature of the charge. A judge that engages in bizarre and inappropriate behavior in jail might suggest that he's got that difficulty. But if defense counsel, in fact, is able to consult with him, what evidence is there that you would expect him to present? Besides his history of past mental illness and... Wasn't that already in the report? That was already in the report. However, sometimes there is testimony regarding just a person's ability to essentially take care of themselves, information regarding their IQ. But in this very case, a judge said, okay, I'm going to accept the stipulation as to what Dr. Lowe testified to. And now I'm going to call this hearing. This is what it's scheduled for. And he turns to the prosecutor and says, do you have any further evidence you want to present? The prosecutor says, no, Judge. He turns to the defense attorney and says, do you have any further evidence you want to present? The defense attorney says, no, Judge. And the defense attorney says, well, the entire evidence piece before me is the report of Dr. Lowe. And based upon that, I'm finding the defendant fit. If I understand your argument correctly, that would have complied with Lewis and his progeny. If there was some evidence on the record that showed that the trial court made the decision affirmatively as well as performed some independent judicial analysis. What besides the report was there for him to analyze? Well, certainly he could have himself questioned defense counsel. But he didn't. I'm giving you the specific hypothetical. Wouldn't that have adequately covered the business of you have to conduct the hearing? Certainly that would have adequately covered the fitness hearing itself. However, there was a bona fide doubt raised again at trial and sentencing. But your primary focus here is the fitness hearing was bad because he accepted the status of the stipulation that he was fit as opposed to the report. That is one grounds of my argument. I also argue that the trial court erred in failing to raise the issue of fitness when there was a bona fide doubt of his fitness. If we agree that this is not an appropriate fitness hearing, what's the appropriate remedy from this court? Remand for a new fitness hearing. We don't have to remand for a new trial? A new trial would likely flow out of a new fitness hearing, may I? I have a question. Certainly. However, if there was a new fitness hearing, there may not necessarily be a new trial because Mr. Shaw may be sent for treatment. He may have a discharge hearing. Should there be any problem, to be more specific, would there be any problem in our expecting the trial court at this point to conduct a retrospective fitness hearing for back when this case was tried? I don't believe a retrospective fitness hearing would be appropriate because the fitness evaluations are over a year old. Well, then we can't just remand for a fitness hearing. We would have to reverse the conviction and remand for a new trial. Correct. Excuse me. I misspoke before. I would request that this court reverse the conviction and remand for a new fitness hearing and, if necessary, a new trial. And this was a case of attempted criminal sexual assault in which we had a victim testify? Correct. And so we agreed with the argument we'd have to require her to go through all this again because of the absence of the magical incantations. No, Your Honor. It would be because Mr. Shaw's due process rights were violated. Of course. No. All right. Thank you, counsel. Thank you. We'll have time and rebut. Mr. Mondragon. Good morning, Your Honors. Good morning. Counsel. Just on that last point, if you don't mind, in terms of the potential for a retrospective fitness hearing, it would appear that the timing of Dr. Lowe's report relative to the trial would allow for a retrospective fitness hearing based on the report alone and whatever recollections the trial judge might have at that time. Is that true? That would be the State's position, Your Honor. I mean, we're only looking for clarification, I believe, as to what the court actually considered at the time that it's made its fitness ruling right before the trial. And as the court pointed out, you know, what's the minimum that the trial court has to do in order to meet the magical terms and satisfy Lewis and his prodigy? And I think the minimum that's required is that the court suggests that it has read the report that's been submitted. I don't understand why the court has not given that benefit of the doubt and that is not assumed to have been done by some decisions that are out there suggesting that the court has to affirmatively state that it read the report. The record here pretty clearly indicates that the trial judge had in his hand the report. He asked defense counsel, do you have the report that was filed on October 29th? And then he follows up by saying, have you read the report dated October 4th? So he clearly has the report in his hand as he's questioning defense counsel and the prosecutor as to whether or not they're going to stipulate to that report's contents. So I don't think it's a big leap of faith here to believe that the trial judge actually read the report that's in his hand and relied upon that. And when the trial judge says, well, we'll show based on the evidence, what other evidence could he have that he's basing this decision on if not the report, it's obviously in his possession in front of him at the time that he's making this ruling. So I think there is an affirmative showing actually in the record that the trial judge had the report, read the report, relied upon the report, and the stipulations from both parties in making his ruling. Well, the question is, was there a stipulation that the defendant was fit or a stipulation that the reports may be considered? The stipulation was that the reports can be considered. I think the trial judge was very clear there. If called to testify, would you stipulate that Dr. Lowe would testify in conformance with this and that or in conformance with his report? Holding the report probably in his hand at the time that he asked counsel to make that stipulation. So I think the minimum has been met here. But I think the court actually raises a pretty good point, and that is, in all honesty, what does counsel know about mental illness or the judge, for that matter? I mean, society is struggling with mental illness all over, in several instances, particularly in the judicial system. But I think we're asking a great deal of a trial judge to put himself in a position above that of a psychiatrist or psychologist in making an independent evaluation. I mean, it's one thing to say, judge, you have the power to do something. You have the power to make this decision. You have the power to ask questions. You have the power to call hearings. It's quite another to put the burden on the trial judge to say that you have the obligation to make an independent evaluation, even though we all recognize you have no background or no experience and no ability to really make these types of mental evaluations. Mr. Londrigan, can I throw out a hypothetical for you that's out of the realm of possibility here? Because, you know, like Judge Steigman, seeing these reports, these witness reports, they come in in a sealed envelope. They go into the court file. Is the Supreme Court's decision in Lewis aimed at potentially averting a situation where the trial court receives a stipulation that Dr. So-and-so has found the defendant to be fit, receives the stipulation that report remains in the sealed file, court never looks at it. It comes up to the appellate court in the same posture as this court, with that trial judge never having reviewed that report. I mean, that is a scenario that's possible. And the trial judge deems it sufficient simply that the two parties have stipulated that that was good enough. But it wasn't good enough for the trial judge just simply to accept that that stipulation. So is that a scenario that the Lewis court is trying to avert, by having the trial judge make some demonstration that he has, in fact, reviewed the report? I think that's exactly the situation the Lewis court was attempting to avoid, Your Honor. Apparently, they were concerned about that procedure, and they wanted to make sure that at a minimum the trial court had read that report and was, in fact, basing its decision on that report. And that's why they suggested there be some evidence in the record of that. They also went on to suggest that the court could do more if it was so inclined. But they did establish that at a minimum, to simply say, I'm not accepting the stipulations to the finding. I'm accepting the stipulation that this is the evidence. I have reviewed the evidence, and based on that evidence, this is my finding. So I agree. I think that was the sole purpose of Lewis. Whether or not there's justification for that, I'll leave it to this court to decide. But I think that's the minimum, and I think that minimum was met here in this case. I think the trial court should be given the benefit of the doubt from this record. It appears as though he did have the report in front of him. I think he, in fact, read that report and relied upon that report in making his finding. And as the trial progresses, should this defendant or any defendant act out, I question really the trial court's obligation or duty to sua sponte, involve himself in yet a third, fourth, fifth mental evaluation. What was the space of time between the evaluation and trial? Several months? A couple, I think, Judge. The evaluation was in October, and if I'm correct, was the trial in December? The trial was November 18. Your brief points out that the day the defendant's trial began is when, apparently, this fitness question was last addressed by the court. By the way, that's one of the questions I wanted to ask you in the brief. It says, November 18, 2013, the day the defendant's trial began, the court had the following conversation with counsel. It says, counsel, we dealt with a fitness issue that was addressed by Dr. Lowe, and the report filed the 21st of October, and then the whole thing goes on. The court didn't say, we're now going to have a hearing on the fitness of the defendant's stand trial, but that seems to be what he was suggesting here, and I'm just not sure what else it could mean. The parties had the report of Dr. Lowe, and it was asked each of them to stipulate that if we were called to testify, and then the judge goes on to say, he checks to make sure that the parties are stipulating to the report, and then he says, well, we'll show based upon the evidence presented, the court finds the defendant is now fit to plead in order to stand trial. So this kind of goes back to my question with Ms. Kimball. Instead of that last statement, the trial judge said, in addition to the report of Dr. Lowe, which the parties have now stipulated to, do either of you have any evidence you want to present in the question of the defendant's fitness? And they looked at him with his blank stare like he's demented,  and they said, no, Judge, no, Your Honor, respectively the prosecutor and defense attorney. And he says, well, then we'll show all their presented fitness hearing, and based upon that evidence, I find the defendant fit to stand trial. Apparently, I think my understanding from Ms. Kimball is that would have been satisfactory under Lewis. Is that your understanding too? I suppose, Judge, yes. It would be the position of the state that that would be sufficient because there would be, I think, an inference in there that the court had reviewed the report of the psychiatrist and was accepting that as evidence. Well, and the same question I asked Ms. Kimball. I don't want to be speculating about it. As best you can tell from this record, had that dialogue occurred, the defendant says, okay, I'm accepting this stipulation. I think it was Lozar and Vargas were the respective prosecutor and defense attorneys. Mr. Lozar, do you have any other evidence you'd want to present? Is there any suggestion in this record? Can you imagine what else it would be that he'd be presenting? Of course, he's arguing the defendant's fit. Well, you know, and that was my initial point, Judge. I mean, given all three parties, the judge and the two of you, how do any of those people stand in a position to make a mental evaluation of this defendant or to try to suggest that the psychologists or psychiatrists, that both of them who had reviewed this didn't know what they were doing? I suppose if I've never been in that position, but I suppose the argument could be that Mr. Vargas, who was the public defender appointed representative, had serious concerns at this stage and disagreed with the conclusion of Dr. Love that the defendant was fit to stand trial, based on what the defendant said to Vargas and his ongoing preparation for trial, I guess it was to start that day. I have not seen this happen, but perhaps one of the things that could happen is defense counsel could say, Judge, as an officer of the court, in good faith, I need to testify here because I don't believe the defendant is fit and perhaps we need to get new counsel for him because I can't be both his lawyer and witness, but raise some question along those lines. I don't recall seeing that done. I suspect you've done a lot of research in this area. Have you seen anything like that? I have not, but I would agree that defense counsel is in that position, but I think most attorneys feel uncomfortable. Well, they should. But I suppose there's, you know, indeed, wouldn't there be a duty upon the defense counsel in that moment? I mean, let's assume the last few days before trial he spent some time with his client in the county jail trying to prepare this case for trial, and he is strongly of the opinion. That is the criteria, after all. Is he able to cooperate with counsel and understand what this is all about? But based upon this conversation, he's not. And I think I need to tell the court this. I think that might be the only other evidence to be presented. And maybe the inference is that if defense counsel isn't stepping up to do this, it isn't there. Well, I think the court raises a good point. I think if that were to have taken place, yeah, I think that would give the trial court a new perspective. In your brief, neither you nor Ms. Kimmel talk much about the underlying evidence at trial in this case of the attempted criminal sexual assault. But this is an interesting legal discussion with consequences. What was that evidence at trial? What was the state's evidence at trial? I don't recall, Your Honor. Did the victim testify in this case? I would think she would have had to have, but in all honesty, it was not an issue that I looked at because I didn't think it was being raised by the appellant. Well, the cost, of course, of this interesting legal analysis is, and I think Ms. Kimmel is probably right, that if we don't think Lewis was complied with, we have to reverse the conviction and then put this victim through it again. I'm not totally in agreement with that, Judge. I understand where the court is coming from, and I understand that one's mental factors. Do you think a retrospective analysis is capable, consistent with what the Supremes have said? I don't know that I would determine a retrospective analysis. I would determine more, send it back down to the trial court for a further explanation of what the trial court considered at the time of the mental health hearing in November of 2013. I mean, if that's what we're really dancing around, I mean, that's the key question. What did the court consider? And you're making an assumption that it didn't consider the very report that you had in its hands. So you think it would be, a remand might be appropriate, if we found the Lewis factors lacking here, to say, Judge Afanas, the argument is that you blindly accepted the stipulation as to fitness without exercising your independent judicial judgment. Go back on remand and let us know whether that's true. And if, in fact, you exercise your judicial discretion and just considered the report of Dr. Lowe as one of the factors, tell us so, and then you can, if that's the case, you can reimpose the conviction and send it back up or do whatever, and we'll handle it from there. Something along those lines? That would be the State's position. That would be consistent with Supreme Court precedent, such as people being ill. That's my understanding, Judge. So it would be to not get further evidence presented, but to get a clarification of what the trial judge did. Right. I don't think further evidence is warranted. I think we already know. Well, further evidence would be evidence going back to November of 2013 as to what other evidence, as of that time, was available on the question of the defendant's fitness. I'm not sure what it would be either. I think what we're struggling with is what did the court consider at the time that it ruled on its fitness hearing on November 18th of 2013. And if you feel as though the record is incomplete in that regard and needs clarification, I think the appropriate order would be to seek that clarification. If there's no further questions, we'll finish. I don't see any. Thank you. Thank you, Your Honor. Ms. Kimmel, rebuttal. Your Honors, I'd like to first address the timeline that was at issue here because there were some questions regarding that. Defense counsel first requested a fitness evaluation seven months before trial. Then six months before trial, Dr. Jekyll performed that fitness evaluation. Months passed with no mention of fitness. Then about two months before trial, defense counsel raised concerns of Mr. Shaw's deteriorating condition, and the trial court responded, that would not, quite frankly, surprise me. Dr. Jekyll's, excuse me, Dr. Lowe's fitness evaluation happened then two months before trial, and the fitness hearing happened on the first day of trial. So there was some time between each of these fitness evaluations and the trial actually occurring. Now even if this court finds that the fitness hearing was proper, there was a bona fide doubt of Mr. Shaw's fitness to stand trial, which came about based on a number of cumulative factors during trial and sentencing. What really changed in terms of the defendant's mannerisms and so forth at the time of trial as compared to what the trial court had previously commented on, what he had seen, and what was noted in such as Dr. Lowe's and Dr. Jekyll's reports? Certainly. The biggest contrast would be his ability to communicate. Like I mentioned earlier, Dr. Jekyll's report contained a question and answer session with Mr. Shaw, which he posed questions about his understanding of the legal system, and Mr. Shaw was able to answer in coherent responses in complete sentences. His trial testimony did not include anything that could be described as coherent, and that's seen in the jury being unable to understand his testimony and requesting a transcript and defense counsel's own description of the testimony that it did not make any sense. Well, what about Dr. Lowe's report where he said that during his conversation with the defendant it was difficult to converse with him, the defendant would go into long, rambling sentences, more animated sentences, long sentences, didn't make sense. Doesn't that seem to mirror what happened during the trial? He also did describe it, though, as mostly coherent. So the juxtaposition, and again, what I would describe as an internal inconsistency in his report, that's something that if Dr. Lowe had possibly testified instead of his report being stipulated to, that clarification could have been made. However, at trial and sentencing, this is the cumulative information that was before the court that raised a bona fide doubt of his fitness. Defense counsel's first motion for a fitness evaluation, defense counsel's subsequent motion for a fitness hearing based on Mr. Shaw's deteriorating condition, the trial court statement that he was not surprised by defense counsel's ongoing concerns, concerns raised by the Champaign County Jail mental health workers due to Mr. Shaw's bizarre behavior, Mr. Shaw's incoherent statements, the jury note that they were unable to understand his statements, Mr. Shaw's letters to the trial court, which although we have not discussed, are somewhat rambling, and those, again, are attached in the pending. Judge, let me ask you about what Mr. London suggested in his whole business of remand. You heard what he said. The question on remand would be for Judge DeFantis to ask, to answer, did you exercise your independent judicial judgment or did you just rubber stamp the report, which essentially is your argument? Is that something which we can remand back for an answer from Judge DeFantis? And if not, why not? Your Honor, if you found that the fitness hearing was not proper and also found that there was no bona fide doubt of his fitness to stand trial, that may be an option. However, I can think of no case in which that was the remedy prescribed. In People v. Coronado, where there was an improper fitness hearing, it was remanded for a new fitness hearing and, if necessary, a new trial. In People v. Shroeck, where there was a bona fide doubt of defendant's fitness raised during trial and sentencing, even though there had previously been a fitness hearing in that case, that was a new trial. The difference, though, Ms. Kimball, is, and I appreciate your candor about this, and this is very, and Mr. Long is going to answer this question as well, and this is kind of a strange area. I appreciate what you said. But here's the difference. It seems to me, I think maybe you conceded it, and I think you probably did too, that had Judge DeFantis said, I have this report in front of me. It's a stipulation as to what he would say. I'm accepting that as the evidence of what he would say. And I don't see either side presenting any additional evidence. So the only thing I have before me then is this report, and based on that report, I'm going to find a defendant fit to stand trial. You seem to be indicating that that would comply with the standards of Lewis or the judge who have exercised his independent judgment as opposed to, you know, just accepting blindly the rubber stamping, the language of the fitness determination. And maybe then that should be the question we ask. Though the problem with asking it is the answer seems so obvious because what other evidence, this goes back to the question you raised earlier, what other evidence could the judge even imagine the parties presenting short of Mr. Vargas, the defense attorney, standing up and saying, Judge, I need to testify, and that's why we need to have a further hearing. Your Honor, in addition to defense counsel or a psychiatric evaluation, another form of evidence that's allowable is defendants' social behavior and abilities, orientation as to time and place, recognition of persons, places, or things, and performance of motor processes. So there are some additional things. Who was going to present any of that at the hearing before Judge DeFantis? Possibly a different expert than a psychological expert. But who was going to call that expert to present it? Neither Lozar in the state or Vargas for the defense indicated they were going to present anything. As a matter of fact, the judge says, Okay, I guess, in effect, that's the hearing. And if anyone had anything else, they could have said, Wait a minute, Judge, we have additional evidence, right? Correct. But no one did. And no one did in this instance. Although my time is up, I'd like to just briefly discuss the matter of retrospective fitness hearing, if that's... Very briefly. Very briefly. Very briefly. Although retrospective fitness hearings are in times appropriate, People v. Neal, which you cited, involved the use of evaluating the effect of psychotropic medication on the defendant. And that's certainly not an argument here. So I would again ask that because of the passage of time, a retrospective fitness hearing is not the appropriate remedy. All right. Thank you, counsel. Thank you both. The matter will be taken under advisement and a written decision shall issue.